## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LI YE CAI,

      Appellant,

    v.

DEPARTMENT OF HOMELAND
   SECURITY,

      Agency.

DOCKET NUMBER
NY-0752-22-0142-I-1

DATE: January 26, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Li Ye Cai</u>, Middle Village, New York, pro se.

<u>Elizabeth Connelly</u>, Esquire, and <u>Frank Charles Sharp</u>, Esquire, New York,
   New York, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which mitigated his removal under chapter 75 to a 30-day suspension. For the reasons discussed below, we DENY the petition for review. We MODIFY the initial decision to find that the agency proved a nexus between the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

misconduct and the efficiency of the service, and to supplement the administrative judge's affirmative defense analysis to find that the appellant failed to establish his claim of equal employment opportunity (EEO) reprisal, failed to establish that he made protected disclosures under 5 U.S.C. § 2302(b)(8), and established that he engaged in additional protected whistleblower activity under 5 U.S.C. § 2302(b)(9), as well as to supplement the penalty analysis. In addition to modifying the initial decision as described above, we also REVERSE the administrative judge's finding that the appellant proved that his age was a motivating factor in the removal. We otherwise AFFIRM the initial decision.

## BACKGROUND

Effective August 31, 2021, the agency removed the appellant from his position as a GS-12 Information Technology Specialist in the Office of Information and Technology (OIT) for Customs and Border Protection (CBP), domiciled at John F. Kennedy International Airport. Initial Appeal File (IAF), Tab 1 at 1, Tab 9 at 160-63. The removal was based on charges of failure to follow supervisory instructions (two specifications), neglect of duty (one specification), and lack of candor (four specifications). IAF, Tab 9 at 155-56, 160-61. In its decision, the agency informed the appellant that he could challenge the removal decision by filing a grievance; requesting that the union invoke arbitration on his behalf; appealing directly to the Board; filing a discrimination complaint through the agency's EEO office; or filing a whistleblower reprisal complaint with the Office of Special Counsel (OSC). IAF, Tab 9 at 161-63. The agency advised him that electing any one of these options could "preclude[] [him] from pursuing remedies through [the remaining forums] with respect to the same matter." *Id.*

As to the failure to follow supervisory instructions charge, the agency alleged that, on September 25, 2019, the appellant failed to spend the entirety of his duty hours at the location and performing the tasks assigned by the Field

Technology Supervisor (FTS). *Id*. at 155. As to the neglect of duty charge, the agency alleged that the appellant failed to complete the mandatory 2020 CBP Privileged User Role Based Training by the July 17, 2020 deadline, resulting in his account being disabled and affecting his ability to perform the full range of his duties. *Id*. As to the lack of candor charge, as relevant to our discussion here, the agency alleged that the appellant submitted a memorandum to the Regional Director falsely claiming that he did not know that the training was mandatory and that he was only made aware of the requirement to complete the training on August 18, 2020. *Id*. at 156.

Prior to his removal, on August 2, 2021, the appellant had initiated contact with his agency's EEO office over his proposed removal, Agency No. HS-CPB-01783-2021. IAF, Tab 1 at 15. According to the EEO counselor's statement, within 45 days of his removal, the appellant contacted the agency's EEO counselor to include his removal in his complaint. IAF, Tab 9 at 130. On October 29, 2021, the agency issued the appellant a notice of right to file a formal complaint of discrimination over his removal, which he timely filed on November 11, 2021.[1] IAF, Tab 1 at 16, Tab 9 at 132.

On or about December 30, 2021, the appellant filed a complaint with OSC, which was assigned OSC File No. MA-22-00502, wherein he alleged that the agency retaliated against him for his protected disclosures or activities by proposing his removal, offering him a last chance agreement, and removing him. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-22-0060-W-1, Initial Appeal File (0060 IAF), Tab 5 at 5, 10-32, Tab 1 at 4. On January 21, 2022, OSC issued a letter notifying the appellant that it was terminating its investigation into his complaint and informing him that he could

---

[1] On November 24, 2021, the appellant also filed his first chapter 75 appeal with the Board over his removal. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-0752-22-0020-I-1, Initial Appeal File (0020 IAF), Tab 1. On December 13, 2021, the administrative judge issued a decision dismissing the appeal as untimely, which became final after neither party filed a petition for review. 0020 IAF, Tab 7 at 1, 4.

seek corrective action by filing an individual right of action (IRA) appeal with the Board. 0060 IAF, Tab 1 at 4-5. On January 24, 2022, the appellant filed an IRA appeal with the Board over that complaint. 0060 IAF, Tab 1. On May 16, 2022, an administrative judge issued an initial decision dismissing that appeal. 0060 IAF, Tab 17, Initial Decision at 2, 15. The appellant has filed a petition for review over that appeal. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-22-0060-W-1, Petition for Review File , Tab 1.

Subsequently, on June 29, 2022, the agency issued a Final Agency Decision (FAD) on the appellant's EEO complaint, concluding that the appellant failed to prove that the agency discriminated against him. IAF, Tab 1 at 20. In its FAD, the agency advised him that he could file an appeal with the Board within 30 days. *Id*. at 21.

On July 18, 2022, the appellant filed the instant chapter 75 appeal challenging his removal and raising affirmative defenses of whistleblower reprisal, EEO reprisal, and age discrimination. *Id*. at 3, 5. The agency moved to dismiss the appellant's whistleblower reprisal affirmative defense, arguing that the issue of whether the appellant had been subjected to whistleblower reprisal when the agency removed him was barred by res judicata as it had already been decided in the 0060 IRA appeal. IAF, Tab 19 at 6. The administrative judge denied the agency's motion, without providing a basis for her ruling. IAF, Tab 28 at 4.

After holding the appellant's requested hearing, the administrative judge issued an initial decision mitigating the removal to a 30-day suspension. IAF, Tab 1 at 2; ID at 1, 14. She found that the agency failed to prove the charge of failure to follow supervisory instructions. ID at 3. She sustained the charge of neglect of duty, reasoning that the appellant neglected to complete the specified training on time and provided inconsistent explanations about whether he knew the training was mandatory. ID at 4. The administrative judge determined that the agency proved only the last of its four specifications of the lack of candor

charge.  ID at 5-6.  Specifically, she found that the appellant lacked candor when he stated to the Regional Director that he did not know he was required to complete the training until August 18, 2020.  *Id*. at 6.

The administrative judge found that the appellant proved that his age was a motivating factor in his removal.  ID at 10-11.  Nevertheless, she concluded that the appellant failed to prove that his age was a "but-for" cause of his removal.  ID at 11.  She did not specifically make a finding as to his claim of EEO reprisal.  *Id*.

As to his whistleblower reprisal affirmative defense, the administrative judge found that the appellant proved that his OSC complaints were a contributing factor in his removal.  ID at 12-13.  She concluded that the agency presented clear and convincing evidence that it would have removed the appellant absent his whistleblowing activity.  ID at 13.  The administrative judge mitigated the removal penalty to a 30-day suspension.  ID at 7-8.

The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 2.  The agency has filed a response in opposition to the appellant's petition for review, and the appellant has filed a reply.  PFR File, Tabs 3-4.  Additionally, the appellant has filed a petition for enforcement of the administrative judge's interim relief order.  PFR File, Tab 5.  The agency has filed a response in opposition to the appellant's petition for enforcement; the appellant filed a reply; and the agency filed an update on its compliance with the interim relief order.  PFR File, Tabs 6-8.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over this mixed-case removal appeal.

Although not raised by either party on review, as a preliminary matter, we address the issue of the appellant's election of forum over his removal action in light of his multiple appeals with the Board and his claims that his removal was the result of both EEO discrimination and retaliation and whistleblower reprisal.  IAF, Tab 1 at 4-5, Tab 18 at 5-7.  We find that the appellant made a binding

election to challenge his removal as a mixed-case complaint, and therefore, the adjudication of the merits of his removal in the instant chapter 75 appeal is proper.

When, as here, an employee alleges that he was subjected to an otherwise appealable adverse action that can be the subject of a negotiated grievance procedure and he claims that action was based on EEO discrimination, the employee may choose among the following: (1) a negotiated grievance procedure; (2) a Board appeal; or (3) a formal EEO complaint. 5 U.S.C. § 7121(d); *Galloway v. Social Security Administration*, 111 M.S.P.R. 78, ¶ 14 (2009). Whichever is filed first generally is deemed a binding, irrevocable election to proceed in that forum. *Carey v. Department of the Interior*, 103 M.S.P.R. 534, ¶ 11 (2006). If the employee elects to file a formal EEO complaint, he may file a Board appeal. 5 U.S.C. § 7702(a)(2); 5 C.F.R. § 1201.151(a)(1). As applicable here, the deadline for filing with the Board is 30 days from receiving the FAD. 5 C.F.R. § 1201.154(b)(1). Such an appeal is known as a "mixed case," and the Board will adjudicate both the underlying appealable action and the discrimination claims.[2] *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 12, 14.

---

[2] Under 5 U.S.C. § 7121(g), an employee subjected to an action appealable to the Board who alleges that the contested action was taken in reprisal for whistleblowing generally may elect to pursue a remedy through only one of the following remedial processes: (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under an applicable negotiated grievance procedure; or (3) a complaint seeking corrective action from OSC. 5 U.S.C. §§ 1214(a)(3), 1221(a), 7121(g)(2)-(3); 5 C.F.R. § 1209.2(d); *Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶ 7. The remedy first sought by an aggrieved employee is deemed an election of that procedure and precludes pursuing the matter in other fora. *Requena*, 2022 MSPB 39, ¶ 8. Section 7121(g) "applies with respect to a prohibited personnel practice other than" a claim of EEO discrimination or reprisal. 5 U.S.C. §§ 2302(b)(1), 7121(d), (g)(1). Assuming, without deciding, that an appellant's filing of an OSC complaint before filing an EEO complaint divests the Board of chapter 75 jurisdiction over a mixed-case appeal, it would not impact the outcome here. The appellant filed his EEO complaint over his removal first on November 11, 2021, before he filed an OSC complaint over his removal on or about December 30, 2021. IAF, Tab 1 at 15; 0060 IAF, Tab 5 at 10-32.

Here, the agency issued the removal decision on August 27, 2021, and it included notice of the appellant's right to challenge his removal through the EEO process, a grievance, or a direct appeal to the Board. IAF, Tab 9 at 161-63. It also advised him that choosing one of these options might preclude the others. *Id*. The record reflects that the appellant timely filed a formal EEO complaint challenging his removal on November 11, 2021, which the agency accepted for investigation.[3] IAF, Tab 1 at 16, Tab 9 at 132. The agency issued its FAD denying his EEO complaint on June 29, 2022, and the appellant timely filed the instant appeal less than 30 days later. IAF, Tab 1 at 15-20. Accordingly, his appeal was timely filed. *See* 5 C.F.R. § 1201.154(b)(1). Moreover, at the time of his removal, he was a nonpreference eligible, permanent competitive service employee with over 1 year of service. IAF, Tab 1 at 1. Therefore, the Board has jurisdiction over his mixed-case appeal. 5 U.S.C. §§ 7511(a)(1)(A), 7512(1), 7702(a)(1). Next, we turn to the appellant's arguments on review.

On review, the appellant disagrees with the penalty and argues that the administrative judge erred in (1) sustaining specification 4 of the lack of candor charge; (2) finding that the appellant's prior EEO activity was not a "but for" cause of the discipline; and (3) finding that the agency demonstrated that it would have issued the removal notwithstanding the appellant's whistleblowing activity. PFR File, Tab 1 at 4-5. The appellant also appears to reargue that the agency subjected him to age discrimination with respect to his work schedule in March 2020. *Id*. at 8-9. The parties do not dispute the administrative judge's findings sustaining the neglect of duty charge and not sustaining the failure to follow supervisory instruction charge and specifications 1-3 of the lack of candor charge, and we decline to disturb them.

_____

[3] Although he was covered by a collective bargaining agreement, the appellant did not file a grievance of his removal. IAF, Tab 13 at 23.

The appellant has not provided a basis to disturb the administrative judge's conclusion that the agency proved specification 4 of the lack of candor charge.

To prove lack of candor, the agency must show that the employee knowingly gave incorrect or incomplete information. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). When an underlying misconduct charge has been proven, a concealment or lack of candor charge based on the appellant's failure to respond truthfully or completely when questioned about matters relating to the proven misconduct must also be sustained. *Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶ 12 (2009), *aff'd per curiam*, 383 F. App'x 939 (Fed. Cir. 2010).

The administrative judge found that the appellant submitted an unsworn memorandum to the Regional Director that lacked candor because, as claimed by the agency, the appellant's statement that he did not know the 2020 CBP Privileged User Role Based Training was mandatory until August 18, 2020, was contradicted by emails from the Regional Director and the FTS informing the appellant and others to complete the mandatory training by July 17, 2020. ID at 6; IAF, Tab 6 at 120. The administrative judge did not credit the appellant's hearing testimony that he did not know the training was mandatory because it was not listed as mandatory training in the agency's training database. ID at 4, 6. In so doing, she reasoned that the appellant's testimony was inconsistent with his written reply to the proposed removal, in which he stated that he misunderstood the instruction because English is not his first language. ID at 4; IAF, Tab 9 at 138.

On review, the appellant argues that the administrative judge "overlooked" or perhaps did not properly weigh the evidence as to this specification. PFR File, Tab 1 at 6-8. He reargues that he did not know the training was mandatory because it was not listed on his mandatory training list within the agency's Performance and Learning Management System (PALMS) and asserts that it was not required in 2018. *Id*. at 6-7. Therefore, he was not "knowingly untruthful" in

his statement to the Regional Director. *Id.* In resolving credibility issues, the trier of fact must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Among the factors an administrative judge must consider in resolving credibility disputes is any prior inconsistent statement by the witness, the contradiction of his version of events by other evidence, and the inherent improbability of his version, as well as his demeanor. *Id.*

The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge correctly identified that the central issue to establishing the charge is whether the appellant knew he must complete the training before August 18, 2020. ID at 6. We discern no basis to disturb the administrative judge's finding that he did.

As the administrative judge observed, the agency sent multiple emails reminding the appellant of this training requirement. ID at 4. Specifically, the agency sent three emails before the July 17, 2020 deadline, informing the appellant in bold that the training was "mandatory." IAF, Tab 6 at 121, 126-27. While one email was to a group of employees, the appellant's supervisor sent two of those emails directly to the appellant alone. *Id.* The appellant acknowledged that he received emails advising him of the mandatory nature of the training. IAF, Tab 31 at 5; PFR File, Tab 1 at 7.

As the administrative judge observed, the appellant's claim that he did not know the training was mandatory because it was not designated as such in PALMS was contradicted by his response to the proposed removal that he

misunderstood the instruction due to the stress caused by the pandemic and because "English is his second language." ID at 4; IAF, Tab 9 at 137-38. She also reasoned that the appellant's version of events was, in essence, implausible because he had previously completed the training in 2016, 2017, and 2019. ID at 6; IAF, Tab 9 at 181. Even when, as here, an administrative judge does not explicitly make observations regarding the appellant's demeanor, her findings as to the credibility of his testimony are necessarily intertwined with an analysis of his demeanor at trial, and the Board must defer to them. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372 (Fed. Cir. 2016) (finding that the Board erred in substituting its judgment as to a petitioner's potential for rehabilitation for that of an administrative judge because the administrative judge's findings were made after observing the appellant's live testimony and, even though the administrative judge did not expressly discuss demeanor, her "findings about [the petitioner's] propensity for rehabilitation are necessarily intertwined with issues of credibility and an analysis of his demeanor at trial"). Accordingly, we decline to disturb the administrative judge's finding that the agency proved that the appellant knowingly made an incorrect claim in an August 19, 2020 statement to the Regional Director that he "was not aware of the mandatory nature of the course." ID at 4, 6; IAF, Tab 6 at 120.

As to the appellant's claim that the training was not mandatory in 2018, it does not appear that he raised this argument below. PFR File, Tab 1 at 7; IAF, Tab 24 at 6-7, Tab 31 at 5. Further, he does not indicate whether there is evidence to support this claim. PFR File, Tab 1 at 7. In any event, the fact that the training was not required for 2018 does not, as he claims, give credence to his assertion that he did not know it was mandatory in 2020. *Id.*

On review, the appellant reargues that more than 50 other employees nationwide failed to timely complete the same training based on the agency's alleged failure to designate the training as mandatory in PALMS. PFR File, Tab 1 at 7. He relies on an email he and various other employees received for not

taking the "MANDATORY 2019 Privileged User Training course" and instructing them to complete it immediately. IAF, Tab 24 at 30 (capitalization in the original); PFR File, Tab 1 at 7. However, as the agency correctly argues, that email concerned the 2019 training, not the 2020 training at issue in this appeal. IAF, Tab 24 at 30; PFR File, Tab 3 at 11. Indeed, this evidence further supports the administrative judge's finding that the training was a recurring requirement of the appellant's job. Thus, we decline to disturb the administrative judge's conclusion that the appellant knew, prior to August 18, 2020, that the training was mandatory. Accordingly, we discern no basis to disturb the administrative judge's finding that the agency proved specification 4 and the lack of candor charge. *See Miller v. U.S. Postal Service*, 117 M.S.P.R. 557, ¶ 17 (2012) (explaining that when there is one charge with multiple factual specifications, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge (citation omitted)).

We reverse the administrative judge's finding that the appellant proved that his age was a motivating factor in his removal, and modify the initial decision to find that the appellant also failed to prove that his prior EEO activity was a motivating factor in his removal.

The methods by which an appellant may prove a claim of discrimination or reprisal are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic"; (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment"; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" (i.e., the burden-shifting standard under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04

(1973)); and (3) some combination of direct and indirect evidence. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 24, 30 (quoting *Troupe v. May Department Stores Company*, 20 F.3d 734, 736-37 (7th Cir. 1994), and citing *Ortiz v. Werner Enterprises, Incorporated*, 834 F.3d 760, 764-65 (7th Cir. 2016)). These types of evidence, standing alone or together, could be sufficient to prove status-based discrimination. *Id.*

> *We reverse the administrative judge's finding that the appellant proved that his age was a motivating factor in his removal.*

The administrative judge found that the appellant proved his age was a motivating factor in his removal, but failed to prove that it was a but-for cause. ID at 10-11. She reasoned that it was "significant that the sustained charges date back to July 2020, whereas management did not take disciplinary action until January 2021." ID at 10-11. We disagree that the timing between the appellant's misconduct and his removal was suspicious.

The alleged incidents underlying the appellant's proposed removal took place between September 25, 2019, and August 19, 2020. IAF, Tab 9 at 155-56. The agency requested that its Office of Professional Responsibility (OPR) begin an administrative inquiry into the appellant's alleged misconduct on November 19, 2019, which is about 2 months after the September 25, 2019 incident underlying the failure to follow instruction charge, and not in June 2020 as the appellant alleges on review. IAF, Tab 10 at 47, 58; PFR File, Tab 1 at 9. The agency followed up with OPR in December 2019, and OPR opened its investigation into the matter on January 7, 2020. *Id*. at 55-56. The inquiry report was not completed until August 31, 2020. *Id*. at 47. Thus, the appellant's January 14, 2021 proposed removal was issued 4 1/2 months after the conclusion of the inquiry. Under these circumstances, we do not agree with the administrative judge that the timing of the agency's response to the appellant's misconduct was suspicious. Accordingly, we find that the appellant did not prove that his age was a motivating factor in his removal.

*The appellant's claim relating to his schedule does not provide a basis for granting review regarding his age discrimination and EEO reprisal claims.*

On review, the appellant again argues that the administrative judge "overlooked" or did not properly weigh the evidence he presented below that the OIT Area Manager treated two younger employees in his building more favorably in March 2020 when she issued a weekly schedule instructing the appellant, who at the time was about 72 years old and considered high-risk for COVID-19, to work in the office twice as often as his two younger coworkers. PFR File, Tab 1 at 8-9; IAF, Tab 11 at 139. The administrative judge did not address this claim. We modify the initial decision to do so here.

To the extent the appellant is arguing that the March 2020 schedule itself is discriminatory or retaliatory, an appellant's assignment of a particular schedule is not an appealable action. Prohibited personnel practices under 5 U.S.C. § 2302(b), including discrimination claims, are not an independent source of Board jurisdiction. *See Lethridge v. U.S. Postal Service*, 99 M.S.P.R. 675, ¶¶ 8-13 (2005) (holding that the Board does not have jurisdiction over discrimination claims raised in connection with a proposed removal or other non-appealable action, even when those claims are inextricably intertwined with an otherwise appealable action). Therefore, we lack jurisdiction over the appellant's schedule.

To the extent the appellant is alleging that the March 2020 telework schedule is part of a "convincing mosaic" or evidence of disparate treatment demonstrating discriminatory intent by his management chain against individuals based on their age and prior EEO activity, we are also not persuaded. *See Pridgen*, 2022 MSPB 31, ¶ 24. The schedule at issue was sent by the OIT Area Manager, who listed on the schedule 10 employees assigned in "Building 77," "Terminals Day," and "Terminals Night." IAF, Tab 11 at 138-39. The schedule shows that, for the workweek starting with March 23, 2020, through the workweek starting with April 13, 2020, the appellant was scheduled to work

on-site twice as often as his two younger coworkers in "Building 77." *Id.* Further, it shows that one other employee working in "Terminals Day" and all four employees working in "Terminals Night" were also scheduled to work on-site twice as many times as the appellant's other two "Building 77" coworkers. *Id.* at 138-39.

The appellant has not explained why he believes he is similarly situated to the employees in Building 77 or, conversely, why he is not similarly situated to the employees on Terminals Day or Terminals Night. The appellant has not presented any evidence or argument below or on review regarding the age or EEO activity of the "Terminals Day" and "Terminals Night" employees, and therefore we cannot conclude that management was generally treating older employees and employees with prior EEO activity, like the appellant, more harshly by requiring that they work on-site twice as often as younger employees.[4] To the contrary, on April 3, 2020, after the appellant emailed his managers to inform them that he was at higher risk of COVID due to his age, the agency issued a corrected schedule equalizing the in-office time of the appellant and his colleagues. 0060 IAF, Tab 15 at 64-65. Thus, we find that the appellant has not shown that the schedule is part of a "convincing mosaic" of discriminatory intent, nor that it otherwise constitutes comparator evidence.

---

[4] The copy of this schedule that the agency submitted below is cut off at the right margin. IAF File, Tab 11 at 139. In his reply to the agency's response to the petition for review, the appellant attaches a full copy of the weekly schedule, which he alleges was not available before the record closed below. PFR File, Tab 4 at 5-8. The appellant's document shows an additional 4 weeks of the agency's on-site scheduling, for the workweek beginning April 20, 2020, through the workweek beginning May 11, 2020. *Id.* at 6. We decline to grant review based on this allegedly new evidence. The Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). Here, the copy of the schedule submitted by the appellant on review is incomplete because it is missing the last line. PFR File, Tab 4 at 6. Further, the information it provides does not warrant a different outcome in this case, as it shows that, for an additional 4 weeks, other employees in Terminals Day and Terminals Night were assigned to come into the office as frequently as the appellant.

*We modify the initial decision to find that the appellant failed to prove that his prior EEO activity was a motivating factor in his removal.*

The administrative judge did not make a finding as to the appellant's claim of EEO reprisal. ID at 9-11. On review, the appellant reasserts that the agency removed him in retaliation for filing EEO complaints. PFR File, Tab 1 at 8-11. He argues that the June 2020 investigation into his misconduct evidences retaliation because he filed an EEO complaint (Agency No. HS-CBP-01716-2020) around March or June 2020. PFR File, Tab 1 at 9; IAF, Tab 18 at 6. As discussed above, and expanded upon below, we do not find the timing suspicious. IAF, Tab 10 at 47, 58; PFR File, Tab 1 at 9.

The appellant did not file his 2020 formal EEO complaint against the FTS and the OIT Area Manager until September 28, 2020, well after the inquiry into his alleged misconduct began in November 2019, and not in March or June 2020 as he claims. *Cai v. Department of Homeland Security*, MSPB Docket No. NY-1221-21-0142-W-1 (2021 IRA appeal), Initial Appeal File (0142-W-1 IAF), Tab 6 at 2, 8. Even if we assume, without the appellant alleging, that in March 2020 he participated in informal EEO counseling over his 2020 EEO complaint, we still do not find suspicious timing because any March 2020 protected activity still postdates the November 2019 start of the investigation into his misconduct.

On review, the appellant reargues that his removal was retaliation for other prior EEO activity, including a 2013 EEO complaint against the FTS and OIT Area Manager, a 2014 complaint against his then first-level supervisor and the OIT Area Manager, and a 2016 complaint against the same then first-level supervisor, a second-level supervisor, and the OIT Area Manager. IAF, Tab 31 at 5-6, 10-11; PFR File, Tab 1 at 8. However, at least 3 years elapsed between the 2016 EEO complaint and the initiation of the investigation into the appellant's misconduct in November 2019. This period is too distant to find temporal proximity between the removal and the appellant's prior EEO complaints. *See Pridgen*, 2022 MSPB 31, ¶¶ 3, 12, 43, 48 (finding that the timing of the agency's

decision to remove an appellant in 2014, after she requested reasonable accommodation and filed an EEO complaint in 2010, was insufficient to establish retaliation); *Oulianova v. Pension Benefit Guaranty Corporation*, 120 M.S.P.R. 22, ¶¶ 2, 15 (2013) (finding no temporal proximity between the appellant's 2007 EEO activity and a 2010 decision to deny a within-grade increase).

The appellant's remaining arguments generally attack the testimony of the OIT Area Manager, the FTS, and another supervisor that the appellant failed to follow supervisory instructions on September 25, 2019. PFR File, Tab 1; IAF, Tab 24 at 8. For instance, the appellant argues that the FTS falsely testified that he discussed the installation of Port Radiation Inspection, Detection & Evaluation system (PRIDE) icons with an employee on September 25th, while that employee denied that he spoke to the FTS on that day. PFR File, Tab 1 at 8-10. He also refers to six instances in which the agency's witnesses allegedly made contradictory statements with respect to the failure to follow supervisory instruction charge. IAF, Tab 24 at 8-9.

As discussed above, evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" may be used to prove status-based discrimination or retaliation. *Pridgen*, 2022 MSPB 31, ¶ 24. The administrative judge found, and the parties do not dispute on review, that the agency did not prove its charge of failure to follow supervisory instructions. ID at 3. However, she based her finding on her determination that the charge was "inaccurately drafted" rather than that the agency's witnesses lacked credibility. ID at 13. Both the deciding official and the FTS, who initiated the inquiry into the appellant's alleged misconduct, denied that the appellant's age and prior EEO activity played a factor in his removal. IAF, Tab 7 at 130, 136. We decline to disturb the administrative judge's implicit determination that these two witnesses' explanation for their actions were credible.

Lastly, the appellant reargues that the Regional Director essentially provided a false statement when he emailed the appellant in July 2020 requesting

a statement for "a harassment complaint" against the OIT Area Manager, which he claimed he was investigating. IAF, Tab 18 at 55, Tab 24 at 16; PFR File, Tab 1 at 10. It appears that the appellant believes that the Regional Director was necessarily talking about the appellant's EEO complaint (Agency No. HS-CBP-01716-2020) when he was referring to "a harassment complaint," and that the Regional Director's claim that he was investigating it was "false" because the agency would not have put the subject of an investigation (i.e., the Regional Director) in charge of the investigation. *Id*. The appellant's argument is unclear and, without more, appears to be mere speculation about the Regional Director's motives. *Id*. Similarly, he reraises a claim that "someone in the IT department" retaliated against him by providing a false statement to the NY State Department of Labor saying that he quit because he did not want to work on-site. IAF, Tab 24 at 16-17; PFR File, Tab 1 at 10. The appellant does not identify this individual, nor allege why he believes he or she would be motivated to retaliate against him. *Id*. The Board has held that an appellant's speculation about the agency's motives is not probative of the agency's motive. *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 9 (2012). Thus, we also find these arguments unpersuasive.

Accordingly, we find that the appellant did not prove that his age was a motivating factor in his removal. We also modify the initial decision to find that the appellant also failed to prove that his prior EEO activity was a motivating factor in his removal.

<u>We agree with the administrative judge that the agency proved by clear and convincing evidence that it would have removed the appellant notwithstanding his whistleblower activity, and we supplement the analysis here.</u>

In the initial decision, the administrative judge found that the appellant proved a prima facie case of whistleblower reprisal, i.e., that his OSC complaints were a contributing factor in his removal. ID at 12-13. She did not identify which OSC complaints she viewed as protected activity. The parties do not

dispute this finding on review; however, the appellant argues that the administrative judge improperly considered only his OSC activities and failed to consider all of his protected disclosures and activities in her finding. PFR File, Tab 1 at 12. We agree, and supplement the administrative judge's findings accordingly. Nevertheless, we ultimately agree with the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have removed the appellant notwithstanding his whistleblower activities. ID at 12-13.

To prevail on an affirmative defense of reprisal for making a disclosure under 5 U.S.C. § 2302(b)(8) or engaging in an activity under sections 2302(b)(8) and (b)(9)(A)(i), (B), (C), or (D), the appellant must prove by preponderant evidence that his disclosure or activity was protected under these provisions and that it was a contributing factor in the adverse action. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). If he does so, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosures or activity. 5 U.S.C. § 1221(e)(2); *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 24 (2014). In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine

whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).

> *The appellant proved by preponderant evidence that he engaged in protected activities under 5 U.S.C. § 2302(b)(9).*

Here, the appellant identifies the following protected activities that he alleges contributed to his removal: (1) in November 2020, he filed an OSC complaint (MA-21-000299), which he appears to have amended around January 2021 to include the proposed removal, IAF, Tab 18 at 6; (2) on June 21, 2021, he filed an OSC complaint (DI-21-000600), in which he made disclosures of alleged Government wrongdoing, IAF, Tab 1 at 32-35; (3) on August 13, 2021, after receiving a final determination from OSC in his MA-21-000299 complaint, he filed his first IRA Board appeal, 0142-W-1 IAF, Tab 1; (4) on August 18, 2021, he disclosed information to the agency's Office of Inspector General (OIG), 0060 IAF, Tab 6 at 52-53; (5) in 2021, he participated in another OSC investigation involving an unidentified coworker, 0060 IAF, Tab 5 at 8; and (6) on November 24, 2021, he filed his first chapter 75 appeal of his removal, alleging an affirmative defense of whistleblower reprisal, 0020 IAF, Tab 1 at 5.

Under 5 U.S.C. § 2302(b)(9)(C), it is a prohibited personnel practice to take an action against an employee because that employee "disclos[ed] information to the Inspector General . . . of an agency, or the Special Counsel, in accordance with applicable provisions of law." The administrative judge correctly found, and the parties do not dispute on review, that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) with respect to his OSC complaints. ID at 12-13. She did not address his other alleged protected activity. We find that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) with respect to his OIG complaint. *See Pridgen*, 2022 MSPB 31, ¶ 62 (clarifying that, under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC or OIG is protected, regardless of the content).

We find that the appellant's claim to OSC that in 2021 he "participated in a separate OSC investigation involving another colleague," without more does not establishes that he engaged in protected activity. For instance, the appellant does not allege the nature of his participation, that it occurred before his removal, or that the agency had knowledge about it. 0060 IAF, Tab 5 at 8; *see Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶¶ 7, 9 (2016) (finding that an appellant's conclusory allegations that he reported gross mismanagement and a gross waste of funds without further details regarding the nature of his alleged protected disclosures did not satisfy the Board's nonfrivolous allegation standard).

Further, it is undisputed that the appellant alleged whistleblower reprisal in his August 2021 IRA appeal and November 2021 chapter 75 appeal, and so those prior appeals constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), which includes the exercise of any appeal, complaint, or grievance right with regard to remedying a claim of whistleblower reprisal. 0142-W-1 IAF, Tab 1; 0020 IAF, Tab 1 at 5; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 10 (2016) (explaining that a claim of retaliation for filing a prior Board appeal that included a claim of whistleblower reprisal was a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i)); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (recognizing that the Whistleblower Protection Enhancement Act of 2012 expanded the Board's IRA jurisdiction to include reprisal for activity under 5 U.S.C. § 2302(b)(9)(A)(i)). Accordingly, we find that the appellant proved by a preponderance of the evidence that he engaged in protected activity under 5 U.S.C. § 2302(b)(9) in connection with the following activities: his November 2020 OSC complaint (MA-21-000299), June 21, 2021 OSC complaint (DI-21-000600), August 13, 2021 IRA Board appeal, November 2021 chapter 75 removal appeal alleging an affirmative defense of whistleblower reprisal, and August 18, 2021 OIG complaint.

*The appellant failed to prove by preponderant evidence that he made protected disclosures under 5 U.S.C. § 2302(b)(8).*

On review, the appellant reargues that the following disclosures contributed to his removal: (1) on September 16, 2020, he complained to New York City Councilmember Robert Holden, IAF, Tab 18 at 5, 14; (2) in October 2020, he complained to the New York State Division of Human Rights, *id*. at 15; 0060 IAF, Tab 6 at 36-45; (3) in October 2020, he complained to U.S. Representative Grace Meng, IAF, Tab 18 at 5, 32-35; and (4) on May 6, 2021, he complained to U.S. Senator Kirsten Gillibrand, *id*. at 5, 50. The appellant's disclosures included allegations that the agency's management failed to take safety precautions to combat the spread of COVID-19 and protect elders, like himself, who were the most at risk of serious injury or death. *Id*. Specifically, he alleged that in March 2020 his agency instructed him, a senior over the age of 70, to work in the office twice as often as his non-high risk coworkers, in violation of CDC guidance and the NY Governor's Executive Order advising that senior citizens should stay indoors. *Id*. He also disclosed that, after his officemate fell sick from COVID-19, his management failed to timely deep clean the office or provide personal protective equipment (PPE), and denied employee requests to quarantine.[5] *Id*.

A protected disclosure is one that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Mudd,* 120 M.S.P.R. 365, ¶ 5 & n.3. The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer in his position with knowledge of the essential facts known to, and readily ascertainable by, the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd,*

---

[5] According to the appellant, his officemate later passed away. IAF, Tab 18 at 5.

120 M.S.P.R. 365, ¶ 5. Concerning a disclosure of a danger to public health or safety, the inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under whistleblower protection laws is guided by several factors, including (1) "the likelihood of harm resulting from the danger," (2) how soon the harm might occur, and (3) "the nature of the harm," i.e., "the potential consequences." *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008).

The time period for assessing the reasonableness of an appellant's belief is when he made the disclosure. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 35. We find that a reasonable person in the appellant's position with knowledge of the facts known to him when he made the complaints on September 16, 2020, and in October 2020 and May 2021, could not reasonably conclude that the agency's actions evidenced a substantial and specific danger to public health or safety, or any of the conditions set forth in 5 U.S.C. § 2302(b)(8). Indeed, at the time that he made these complaints, the appellant was aware that management officials were taking the necessary safety precautions, including deep cleaning the office space and essentially allowing employees to quarantine if they had been exposed to COVID-19, and that the CDC guidelines and New York Executive Order were merely guidelines that did not supersede his requirement to work on-site as an essential employee. Specifically, the record shows that on April 2, 2020, in response to an email from the appellant questioning why he and his group were not quarantining following his officemate's reported illness, the FTS informed the appellant that he could telework or take leave. IAF, Tab 15 at 52-53. Then, on April 3, 2020, the office telework schedule, which originally had him scheduled to work in the office twice as often as his younger colleagues, was revised to require only that the appellant or one of eight coworkers work on-site per week, resulting in the appellant not having to report on-site until May 25, 2020. 0060 IAF, Tab 6 at 62-63, Tab 15 at 64-65.

Moreover, on September 14, 2020, a senior attorney at the agency's Office of the Associate Chief Counsel emailed the appellant informing him that the New York Governor's Executive Order implementing "New York State on Policy that Assures Uniform Safety for Everyone (PAUSE)" and "Matilda's Law," which advised senior citizens over the age of 70 to shelter in place, were merely guidelines and nevertheless did not apply to the agency's essential personnel, such as the appellant. 0060 IAF, Tab 6 at 11-12. Thus, under these circumstances, we find that the appellant's belief in September and October 2020 and May 2021 that he was disclosing any of the conditions set forth in 5 U.S.C. § 2302(b)(8) was not reasonable because by that time he was aware that the agency was already taking the safety precautions about which he was complaining and that the Executive Order did not apply to him as an essential worker.

> *The agency proved by clear and convincing evidence that it would have removed the appellant notwithstanding the appellant's protected activity.*

We now turn back to the activity that we have found protected under 5 U.S.C. § 2302(b)(9), i.e., the appellant's November 2020 and June 21, 2021 OSC complaints, August 13, 2021 IRA Board appeal, November 2021 chapter 75 removal appeal, and August 18, 2021 OIG complaint. An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.* As stated above, neither party disputes the

administrative judge's finding that the appellant proved that his protected activity was a contributing factor in his removal, and we find that the record supports it. ID at 12-13.

Here, the appellant established that the deciding official had direct knowledge of his protected activities because the appellant emailed the deciding official on June 29, 2021, before he issued the August 27, 2021 removal decision, informing him of his protected activity. 0060 IAF, Tab 16 at 36-37. Specifically, he notified the deciding official that he had "filed multiple complaints against [the] FTS . . . for the gross management and blatant violations of CDC and [s]tate health guidelines during the COVID outbreak." *Id*. at 36. He then described the content of his complaints, including that the agency's management failed to take safety precautions to combat the spread of COVID-19 and protect elders, like himself, who were the most at risk of serious injury or death. *Id*. He alleged that in March 2020, management instructed him, a senior over the age of 70, to work in the office twice as often as his non-high risk coworkers, in violation of New York State guidelines advising that senior citizens should stay indoors. *Id*. He also stated that, after his officemate fell sick from COVID-19, management failed to timely clean the office and denied his requests to quarantine. *Id*. at 36-37.

Indeed, OSC's preliminary determination letter concerning his November 2020 OSC complaint states that his complaint contained disclosures that the appellant was "denied self-quarantine and scheduled more in-person work than younger colleagues as well as . . . that [his] office was not cleaned after a colleague had COVID-19." 0142-W-1 IAF, Tab 6 at 11.[6] Therefore, we discern no reason to disturb the administrative judge's finding that the appellant proved a prima facie case under the knowledge/timing test. We will now address the appellant's argument that the administrative judge erred in finding that the agency proved by clear and convincing evidence that it would have removed the

---

[6] The appellant's November 2020 OSC complaint, which appears to have been amended on or about January 2021 to include his proposed removal, is not in the record of any of his appeals. 0142-W-1 IAF, Tab 6 at 13.

appellant notwithstanding the appellant's whistleblower activity. We agree with the administrative judge that the agency met its burden.

Regarding the first *Carr* factor, i.e., the strength of the agency's evidence in support of its action, the administrative judge sustained only two of the three charges—the neglect of duty and the lack of candor charges. ID at 4, 6. As to the failure to follow supervisory instructions charge, which she did not sustain, the administrative judge found that the agency did not have sufficient evidence to prove that the appellant received an email instructing him to "spend the entirety of [his] duty hours" at a particular location or instructing him to install desktop icons. ID at 3; IAF, Tab 8 at 35. She also found that the agency did not prove by preponderant evidence three specifications of the lack of candor charge, crediting the appellant's testimony over the agency's witnesses. ID at 5-6.

On the other hand, as discussed above, we agree with the administrative judge's conclusion that the agency presented sufficient evidence to prove by a preponderance of the evidence that the appellant's misconduct regarding the training, which underlies the remaining two sustained charges, i.e., neglect of duty and lack of candor. ID at 4, 6. As the administrative judge correctly noted, the appellant does not dispute that he failed to take the required training as repeatedly instructed on June 2, July 13, and July 16, 2020. ID at 13; IAF, Tab 6 at 121, 126-27. Also, any claims that he misunderstood the instruction, or that he did not learn of the requirement until August 18 are unconvincing in light of the evidence demonstrating that it was a reoccurring annual requirement of his job, which he completed on July 31 after being told again by his supervisor that it was mandatory. IAF, Tab 6 at 131. Although the administrative judge mitigated the penalty to a 30-day suspension, we find that the agency had strong evidence with respect to the two sustained charges to support its removal action, especially in light of the appellant's two prior suspensions for failing to follow instructions. ID at 13. Accordingly, this factor weighs slightly in favor of the agency.

Regarding the second *Carr* factor, i.e., the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision, the appellant avers that the administrative judge did not properly consider the "embarrassment" that his protected activity caused the agency.  PFR File, Tab 1 at 13.  The administrative judge credited the deciding official's unchallenged testimony that he was not involved in the agency activity that the appellant reported to OSC and was not personally invested in it.  ID at 13.  On review, the appellant argues that agency management and the deciding official's retaliatory motive should be based "solely on [the] presumption they acted out of . . . concern for the well-being of their agency, even if they were not directly implicated in the relevant disclosures."  PFR File, Tab 1 at 5.

Here, although the deciding official was aware of the appellant's protected activity before he issued the removal decision, *e.g.*, 0060 IAF, Tab 16 at 36-38, we agree with the administrative judge's conclusion that the appellant's complaints regarding the agency's COVID safety precautions would not have created a strong personal retaliatory motive on the part of the deciding official because none of the appellant's disclosures directly implicated the deciding official.  ID at 13.  Nevertheless, the appellant's argument that the deciding official, as a "senior managing member" at the agency, harbored concern for the general well-being of the agency and its reputation carries weight.  PFR File, Tab 1 at 13.  To this end, the U.S. Court of Appeals for the Federal Circuit has found that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures . . . as the criticism reflects on them in their capacities as managers and employees."  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012).  Thus, we find that the appellant's protected activity resulted in some degree of retaliatory animus on the part of the deciding official.[7]

---

[7] The appellant further challenges the administrative judge's decision to credit the deciding official's statement that he was not involved or personally invested in the whistleblower activity by pointing to instances in which he alleges that the deciding

Lastly, we have also considered whether the OIT Area Manager and the FTS, who were the individuals who scheduled the appellant to work on-site after the confirmed COVID-19 case and were essentially the subjects of his complaints, harbored retaliatory motive against him. Of note, the FTS initiated the investigation into the appellant's misconduct and, therefore, the appellant's contention below that the FTS influenced the agency's action warrants close examination. 0060 IAF, Tab 16 at 36; *see Whitmore*, 680 F.3d at 1371 (explaining that the Board should consider the retaliatory motive of any officials who influenced the agency's action); *Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 30 (2008) (explaining that, in examining retaliatory motive for an agency action, the officials involved in the action may include officials upon whom the proposing or deciding officials relied for information). However, as set forth above, the initial concerns regarding the appellant's misconduct and the emails requesting that the misconduct be investigated began in November 2019, well before the appellant began engaging in the activity that we have found he proved was protected. IAF, Tab 10 at 47, 58. Thus, this weighs against a finding that the officials involved in the protected activity improperly influenced the agency's removal action. Overall, we find that the second *Carr* factor weighs slightly in favor of the agency.

Regarding the third *Carr* factor, the appellant does not appear to challenge the administrative judge's conclusion that neither party introduced evidence that the agency takes similar actions against employees who did not engage in such

_____

official provided false statements. PFR File, Tab 1 at 13-14. For instance, he claims that the deciding official testified that he did not respond to the appellant's request for evidence to support the removal because it was untimely, when the appellant claims that his requests were timely. *Id*. at 13. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). We find that the appellant has not provided a basis to overturn the administrative judge's credibility finding.

protected whistleblower activity, but who are otherwise similarly situated. ID at 13. As discussed above, the appellant generally alleges that 50 other employees failed to timely complete the same training; however, as already established above, the email the appellant cites to in support of that contention refers to a 2019 training, and not the 2020 training at issue in this removal. IAF, Tab 24 at 30; PFR File, Tab 1 at 7-8. To the extent evidence regarding the third *Carr* factor exists, the agency is required to come forward with all reasonably pertinent evidence; the failure to do so "may be at the agency's peril." *Whitmore*, 680 F.3d at 1374. Absent "relevant comparator evidence, the third *Carr* factor cannot favor of the [agency]." *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Accordingly, we find that the third *Carr* factor is neutral.

Ultimately, considering the above factors and the record as a whole, particularly in light of the fact that the appellant had been suspended in 2015 and 2016 for failing to follow supervisory instructions, we agree that the agency proved by clear and convincing evidence that it would have removed the appellant absent his protected disclosures. *See Carr,* 185 F.3d at 1326 (noting that the whistleblower protection statutes are "not meant to protect employees from their own misconduct"). Thus, we agree that the appellant failed to prove his affirmative defense of whistleblower retaliation.[8]

---

[8] The appellant generally alleged below that, in retaliation for his OSC complaints, the agency made false statements to the New York Department of Labor in connection with his application for unemployment benefits. IAF, Tab 24 at 16-17, 34, Tab 31 at 9. However, he did not detail the nature of those statements. IAF, Tab 24 at 16-17, Tab 31 at 9. For the first time on review, the appellant argues that, after he was removed, the agency falsely stated to the New York Department of Labor that he quit his job in order to deny him unemployment benefits. PFR File, Tab 1 at 6. The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay,* 123 M.S.P.R. 245, ¶ 6. The appellant has not met his burden here, and we decline to consider his new claim on review.

<u>We modify the administrative judge's initial decision to find that the agency has established nexus, and find no basis to disturb the administrative judge's findings regarding the penalty determination.</u>

In her initial decision, the administrative judge did not issue a finding regarding nexus. Although neither party raises this issue on review, we modify the initial decision to find that the agency established nexus between the charged misconduct and the efficiency of the service as the misconduct occurred while on duty. *See Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 24 (2016) (observing that there is a presumption of a nexus when the misconduct occurred in part at work). Lastly, we address the appellant's disagreement with the administrative judge's decision to mitigate the removal to a 30-day suspension. PFR File, Tab 1 at 4. We find that the appellant does not provide a basis to disturb the administrative judge's penalty determination.

When not all of the charges are sustained, as here, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency. *Suggs v. Department of Veterans Affairs*, 113 M.S.P.R. 671, ¶ 6 (2010). Here, the administrative judge appears to have reweighed the relevant mitigating and aggravating penalty factors in determining that a 30-day suspension was the appropriate penalty for the appellant's proven misconduct. ID at 6-8; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations). The parties do not dispute her doing so, and we do not revisit her decision to reweigh the factors here. PFR File, Tab 3 at 15.

On review, the appellant argues that the agency imposed a disparate penalty because other employees who did not complete the mandatory training received penalties ranging from verbal counseling to a letter of reprimand. PFR File, Tab 1 at 14. The relevant inquiry in assessing a disparate penalty claim is whether the agency knowingly and unjustifiably treated employees differently. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 14. There often will be a range of

penalties that would fall within the tolerable limits of reasonableness in a given case. *Id*., ¶ 18. That an agency chooses to impose a penalty at the more lenient end of that range in one case should not mean that it cannot impose a penalty at the more severe end of that range in another case. *Id*.

Here, the appellant has not shown that the referenced employees qualify as comparators in the first instance, nor has he shown that any disparate treatment was knowing and unjustifiable. PFR File, Tab 1 at 14. The agency's Table of Offenses shows that, depending on whether an employee had prior discipline, the range of penalties for lack of candor is a 15-day suspension to a removal, and for neglect of duty is a letter of reprimand to a removal. IAF, Tab 29 at 9-10, 22. The Regional Director testified that the penalties of the employees who missed the 2020 mandatory training ranged based on progressive discipline, meaning if somebody had prior discipline, the resulting discipline would have been greater. Hearing Transcript (HT) at 11:00 (testimony of the Regional Director). He testified that the appellant's two prior suspensions were considered as prior discipline for his more severe penalty determination. *Id*. Indeed, the appellant's coworker, who was supervised by the same FTS, was also issued a proposed removal for essentially identical misconduct as the appellant (i.e., failing to follow supervisor instructions on September 25, 2019, with respect to the installation of the PRIDE system and icons, engaging in neglect of duty for failing to timely complete the 2020 CBP Privileged User Role Based Training, and lacking of candor based on his responses to the investigation into the September 2019 misconduct). IAF, Tab 10 at 15-18. He also had prior discipline, including three suspensions. *Id*. at 16-17. Thus, we find that the appellant's removal was within the range of penalties and the agency did not treat the appellant differently by considering his prior discipline in imposing a penalty at the more severe end of that range.

The appellant also argues that the deciding official did not properly consider that he was remorseful. PFR File, Tab 1 at 14. In his *Douglas* factor

worksheet, the deciding official appears to have considered as an aggravating factor his belief that the appellant did not demonstrate sufficient remorse in his response to the proposed removal. IAF, Tab 25 at 33. The administrative judge did not address the appellant's rehabilitative potential below, and therefore we modify her analysis to do so here.

An appellant's rationalizations and lack of remorse indicate little rehabilitation potential and are aggravating factors. *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008). Here, the appellant stated in his written response to the proposed removal that he was "truly sorry for this incident" and that "this or any other kind of misconduct will not happen again." IAF, Tab 9 at 153. However, he also claimed that he misunderstood the instructions that he complete his 2020 CBP Privileged User Role Based Training by July 17, 2020, and asserted that his prior statement to the Regional Director about this training did not lack candor. *Id.* at 138. As discussed above, the administrative judge did not credit the appellant's excuses for failing to complete the training on time, including his claim that he did not understand the instructions. ID at 4, 6, 13. Further, we observe that the appellant also stated in his response to the proposed removal that he was "not in need of rehabilitation." *Id.* at 151. Thus, we find that the deciding official appropriately considered this factor as aggravating.

Lastly, we find unpersuasive the appellant's remaining argument on review that the deciding official and the administrative judge improperly considered his past disciplinary record because his prior 5-day and 3-day suspensions are the subject of EEO complaints, one of which was dismissed and the other of which was pending. PFR File, Tab 1 at 11, 15; IAF, Tab 31 at 10. Although the appellant raised the fact that he had challenged his prior disciplinary actions with the Equal Employment Opportunity Commission (EEOC), the administrative judge did not consider this issue. IAF, Tab 31 at 10; ID at 7-8. Therefore, we supplement her penalty analysis to address it here.

The Board's review of a prior disciplinary action in determining if it may be considered in a *Douglas* penalty analysis is limited to determining whether that action is clearly erroneous, if the employee was informed of the action in writing, the action is a matter of record, and the employee was permitted to dispute the charges before a higher level of authority than the one that imposed the discipline. *Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 338-40 (1981). Here, the appellant's SF-50s documenting his two prior suspensions and his allegations that he has challenged those actions via the EEO process demonstrate that the agency informed the appellant in writing of each of his two prior suspensions, that each was a matter of record, and that the appellant was permitted to dispute the charges in each before a higher authority. IAF, Tab 31 at 10, Tab 10 at 13-14. That one of his prior suspensions is an issue in a pending EEO complaint does not establish that the suspensions were clearly erroneous. Moreover, it is well settled that an agency may consider instances of past discipline that are the subject of a pending EEO complaint. *Gray v. Government Printing Office*, 111 M.S.P.R. 184, ¶ 20 (2009). Thus, we see no error in the agency's and the administrative judge's reliance on the appellant's prior disciplinary record in determining a reasonable penalty. Accordingly, we affirm the initial decision as modified.[9]

_____

[9] After the close of the record on review, the appellant filed a pleading titled, "Petition for Enforcement of [the administrative judge]'s Interim Relief Order." PFR File, Tab 5. The appellant's petition for enforcement is denied because the Board's regulations do not allow for a petition for enforcement of an interim relief order; such petitions apply only to final Board decisions. *Bryant v. Department of the Army*, ¶ 6; *see* 5 C.F.R. § 1201.182(a)-(b) (permitting petitions for enforcement of final Board orders). Further, the appellant's arguments are now moot because interim relief is in effect only pending the disposition of a petition for review. *Garcia v. Department of State*, 106 M.S.P.R. 583, ¶ 7 (2007). If the appellant believes the agency has not complied with this order, he may file a petition for enforcement with the regional office, as further described below.

**ORDER**

We ORDER the agency to cancel the removal action and to substitute a 30-day suspension effective August 31, 2021. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:               Jennifer Everling
                             _____
                             Jennifer Everling
                             Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.